JAMES MALEY v. THE WESTERN UNION TELEGRAPH COM-
PANY, Appellant.

**Telegraphs and telephones:** NEGLIGENT DELAY: MENTAL ANGUISH:
DAMAGES. Wherever mental anguish is the natural consequence
of negligent delay in the transmission and delivery of a telegram
damages are recoverable therefor.
   In this action plaintiff was absent from home and the delay in
delivering a message announcing the serious illness of his wife
caused him to reach home twenty-four hours later than he might
otherwise have done, although he could not have reached her
while living.

**Same:** EVIDENCE. Evidence that an operator receiving a message
for transmission did everything possible to have it forwarded
through another office of the company, but failed because he
could get no response from it, would not have the effect to re-
lieve the company from liability for the delay and was therefore
immaterial, in the absence of any evidence tending to excuse the
conduct of the other office.

**Same:** AMOUNT OF DAMAGE. An award of $600 damages in this case
is reduced on appeal to $300.

*Appeal from Cedar District Court.*—HON. W. N. TREICH-
LER, Judge.

FRIDAY, MAY 5, 1911.

ACTION for damages consequent on delay in delivery
of a telegram resulted in judgment, from which defendant
appeals. *Affirmed* on condition.

*Geo. H. Fearons, Hewitt, Miller & Wallingford, Daw-
ley & Wheeler* and *John T. Moffit,* for appellant.

*C. J. Lynch,* for appellee.

LADD, J.—The following message was delivered to defendant's agent at Stanwood, Iowa, at 4:13 o'clock in the morning of September 6, 1909: "Stanwood, Iowa, Sept. 6, 1909. To Jim Maley, care Ray Maley, Brookings, South Dakota. Come home at once, your wife is sick. Dr. Tilden." The sender was a physician in attendance on the wife, and the sendee, plaintiff herein, was visiting his brother, Ray Maley, on a farm seven miles from Brookings. Mrs. Maley died at about twelve o'clock m. of the same day, and a telegram from plaintiff's brother so stating was delivered with that first mentioned by telephone from Brookings at five o'clock in the afternoon. Had it been delivered promptly, the sendee would have received the first telegram in time to have taken a train at 11:15 o'clock in the forenoon, and he would have reached Stanwood the next morning at 6:30 o'clock. Because of the delay he was compelled to remain until the following day, and arrived in Stanwood twenty-four hours later than he would have arrived but for the defendant's negligence. This did not prevent him from being present at the funeral, and, had the message been promptly delivered, he could not have reached home in time to have seen his wife alive.

I. The mental anguish for which recovery is sought is that growing out of his peculiar situation, far from home, and his two motherless children, ignorant of the

1. TELEGRAPHS AND TELEPHONES: negligent delay in delivery: mental anguish: damages.

circumstances attending the death of his wife, as he had left her well, and unable to participate in necessary preliminary arrangements for her burial. For such detention the defendant, if negligent, was responsible, and no argument is required to demonstrate that his grief for the loss of his wife was intensified thereby. Counsel do not contend otherwise, but call upon this court to define arbitrary boundaries for the doctrine awarding damages because of mental anguish due to the negligent delay

in the carriage of social and personal messages. It urges that recovery in such cases should be limited (1) to persons who are prevented from being present before death, or (2) from being present at the funeral, or (3) where, by reason of the failure of prompt delivery, no arrangements have been made for the funeral when the sendee arrives with the body of the deceased. No reason is assigned for this, save that other courts are said to have so held, and it seems to be feared that in some way the allegorical Pandora's box of evils may be opened should the carrier of intelligence be compelled to respond in reparation of the legitimate consequences of negligence in the discharge of his duties. Since the mental anguish doctrine has been recognized, it would seem that in a proper case damages should be awarded whenever mental anguish is the natural and proximate result of the negligent delay or omission of the carrier in the performance of the duty undertaken.

That some courts have hesitated about doing this, and have erected barriers beyond which they have declared they will not go, has not deterred others from regarding mental anguish as an element of damages to be taken into account whenever the natural consequence of the carrier's wrong. Of this class is *Foreman v. Western Union Tel. Co.*, 141 Iowa, 32. A son sent a telegram to his father announcing the death of his wife, and he was held entitled to recovery for mental anguish suffered because of the father's failure to attend the funeral as a consequence of the omission to deliver the telegram. In *Western U. T. Co. v. Crocker*, 135 Ala. 492 (33 South. 45, 59 L. R. A. 398), the plaintiff sent a message to his mother-in-law, saying that his son, four years old, was worse, "Come on midnight train." In consequence of the failure to deliver the telegram, the grandmother did not reach the home of plaintiff until after the death of the child, and recovery for mental anguish suffered by the father was approved;

the court saying: "The father, in sending the message, knew of the affection existing between the child and the grandmother, and would have been an unnatural father not to have been sustained and comforted by her presence, pained and grieved by her absence in the trial at the time of the death of his son. We are of opinion that the relationship between the sender and sendee and the person named in the message is such as to warrant the recovery of damages for mental suffering and anguish." In *Western U. T. Co. v. Hollingsworth,* 83 Ark. 39 (102 S. W. 681, 11 L. R. A. (N. S). 497, 119 Am. St. Rep. 105), the plaintiff had received a letter stating that his brother was sick with pneumonia, and containing the statement that, "Tuesday will be the ninth day, and you know what that means." On Tuesday he received a telegram stating that his brother was on the point of death; but, owing to the inclemency of the weather and the condition of the roads, he was unable to reach him, and on the next day inquired by telegram of a friend: "How is Hugh? If dead, when and where buried?" The friend delivered a telegram to the defendant in response, saying: "Hugh is better tonight." There was a delay of twenty-four hours in delivering this message, and the plaintiff was allowed to recover for mental anguish. In *Western U. Tel. Co. v. Robinson,* 97 Tenn. 638 (37 S. W. 545, 34 L. R. A. 431) recovery for mental anguish suffered by a father on account of the delay in delivering a telegram to a minister of the gospel calling him to the bedside of a daughter who desired baptism, which resulted in the minister failing to get there before the daughter's death, was approved. These decisions sufficiently illustrate the tendency of the better considered cases to justify the allowance of damages whenever mental anguish is the natural consequence of the carrier's negligence. See, also, *Willis v. Western U. T. Co.,* 69 S. C. 531 (48 S. E. 538, 104 Am. St. Rep. 828);

*Gerock v. Tel. Co.,* 142 N. C. 22 (54 S. E. 783); *Western U. T. Co. v. McIlvoy,* 107 Ky. 633 (55 S. W. 428).

There are plenty of decisions in conflict with these; but, as noted by the Supreme Court of Arkansas in the *Hollingsworth* case, it is difficult to justify them on any logical basis. Thus, in *Rowell v. W. U. Tel. Co.,* 75 Tex. 26 (12 S. W. 534), the court held that where omission or delay in transmitting a message merely resulted in not allaying the anxiety for the condition of a relative, there could be no recovery, and this was followed in *Sparkman v. Tel. Co.* 130 N. C. 447 (41 S. E. 881). See *Western U. T. Co. v. Edmundson,* 91 Tex. 206 (42 S. W. 549). As declining to extend the doctrine beyond the limits claimed by appellant, see *Western U. T. Co. v. McCaul,* 115 Tenn. 99 (90 S. W. 856); *Robinson v. W. U. T. Co.* (Ky.) 68 S. W. 656 (57 L. R. A. 611); *Francis v. W. U. T. Co.,* 58 Minn. 252 (59 N. W. 1078, 25 L. R. A. 406, 49 Am. St. Rep. 507). See valuable note to *W. U. T. Co. v. Hollingsworth,* 11 L. R. A. (N. S.) 497, from which it appears there is much conflict in the decisions, and that those from Texas, even, are not in harmony. The cases are somewhat reviewed in *W. U. T. Co. v. Shenep,* 83 Ark. 476 (104 S. W. 154, 12 L. R. A. (N. S.) 886, 119 Am. St. Rep. 145), where the distinction between worry over imaginary ills and mental anguish as a natural consequence is clearly disclosed. As observed by the court: "Anguish over imaginary situations, worry, anguish over business matters, inconvenience, and annoyance over the ordinary affairs of life do not amount to mental anguish as a recoverable element of damages. Such element is limited to social and personal matters as contradistinguished from business transactions and contemplates suffering in mind over the real ills, sorrows, and griefs of life, and such suffering as would reasonably be contemplated to flow from the failure to acquaint the person with the tidings sought to be conveyed." The limita-

tions on the mental anguish doctrine contended for ought not to obtain. The consequence of the detention of plaintiff, under the circumstances disclosed, was the intensification of his grief because of the great sorrow which had fallen upon him and the delay in reaching home, and we are of opinion that the defendant should respond in damages because of its wrong.

II. The telegraph operator at Stanwood who received the message at 4:13 o'clock in the morning testified that it had not been transmitted when he left the office

2. SAME: evidence. at 7 o'clock a. m. On cross-examination he testified that he tried to get the operator at Cedar Rapids to transmit the message and was then asked if he failed the first time he tried. An objection as immaterial and not cross-examination was sustained, as was also a like objection to an inquiry as to what he next did with the message, and also if he made any efforts to transmit the message, and, if so, when and how. The court might well have been more liberal in its rulings, but they were without prejudice, even if the operator had done everything possible to have the message forwarded through the Cedar Rapids office, for this, while it might exonerate the local operator, would not relieve the defendant, for such testimony would merely indicate that the employees at Cedar Rapids were at fault. The operator who took charge of the office at 7 o'clock made every effort to get into communication with the Cedar Rapids office and was unable to transmit the message until 10:25 a. m. No evidence whatever was introduced tending to excuse the conduct of the employees at Cedar Rapids. This being so, the evidence, had it been received, could not have put a different phase on the situation as to defendant, and we think the ruling without prejudice.

III. The judgment was for $600, and appellant contends that this is excessive. We are inclined so to regard it. The mental anguish for which plaintiff might

recover was not because of the death of his wife or of his inability to be at the bedside or attend the funeral, but solely because of being detained far from home for a period of twenty-four hours under circumstances calculated to produce mental suffering.

3. SAME: amount of damage.

We are of opinion that not to exceed $300 should have been allowed, and if plaintiff cares to file a remittitur within thirty days from the filing of this opinion of all in excess of this amount, with interest, the judgment will be affirmed, with costs, taxed to appellant; otherwise reversed. *Affirmed* on condition.