C. E. ALBROOK, Appellee, v. WESTERN UNION TELEGRAPH CO.,
Appellant.

**DAMAGES:** Avoidable Consequences—Contributory Negligence—
1 **Distinction Between.** The principles that (1) "plaintiff cannot
recover for avoidable consequences," and (2) "plaintiff cannot
recover if guilty of contributory negligence," while often pro-
ducing results closely resembling each other, are yet separate
and distinct. The former is a rule of limitation upon plaintiff's
recovery; the latter defeats the action itself.

PRINCIPLE APPLIED: Defendant negligently failed to de-
liver a death message. Plaintiff claimed the delay prevented him
from reaching the place where his mother died and participating
in the funeral arrangements as he otherwise would, with conse-
quent mental pain to him. The addressee might have telephoned
to his relatives at the place of death in regard to the funeral
arrangements after the message was delivered but did not. *Held*,
the failure to telephone did not constitute contributory negligence,
defeating the action, but simply limited the recovery. *Held*, de-
fendant was sufficiently protected by a direction to the jury to
consider such fact in mitigation of damages.

**APPEAL AND ERROR:** Instructions—Presumption That Jury
2 **Obeyed.** It will be presumed that the jury obeyed the instruc-
tions of the court.

PRINCIPLE APPLIED:  Plaintiff, because of negligence in the delivery of a death message, claimed that he suffered mental anguish, and consequent damages because of two things, to wit:

1.  Failure to participate in the funeral arrangements as soon as he otherwise would, and

2.  Failure to meet his relatives as soon as he otherwise would.

The court did not treat these as different elements of damages, but instructed on the measure of damages that the jury ''must be governed by the facts shown by the evidence in the case.'' *Held*, if it be conceded that there was no evidence that plaintiff suffered any mental anguish and consequent damages by not meeting his relatives as soon as he otherwise would, it will be presumed the jury obeyed the instructions and returned no damages on an issue on which there was no evidence, the verdict having support if the entire amount returned was for damages by reason of failure to participate in the funeral arrangements.

TELEGRAPHS AND TELEPHONES:  Death Message—Delayed Delivery—Mental Anguish—Evidence—Sufficiency.   Evidence reviewed and *held*, in an action for negligent delay in delivering a death message, that plaintiff suffered mental anguish and consequent damages by not meeting his relatives as soon as he otherwise would.

TRIAL:  Instructions—Correct But Not Explicit—Waiver.   If instruction is correct, as far as it goes, though not as explicit or limited as desired, request must be made for the more explicit or limited instruction, or the right thereto, if it exists, will be waived.

PRINCIPLE APPLIED: . Plaintiff sought to recover damages for mental anguish in not meeting his relatives as soon as he otherwise would, because of negligence in delaying the delivery of a death message.  Court made no distinction in the instructions between relatives by consanguinity and affinity.  *Held*, if defendant desired an instruction for the jury to eliminate the ''brothers-in-law'' from consideration, it should have so requested, and not having done so, waived the right.

TELEGRAPHS AND TELEPHONES:  Death Message—Delayed Delivery—Proximate Results.   A death message carries a common-sense suggestion that negligent delay in delivering will bring grief to someone, and just how need not be brought to the attention of the one assuming the duty to deliver.

PRINCIPLE APPLIED: A death message, negligently delayed in delivery, advised plaintiff that his mother could not live. *Held*, recovery might be had, among other elements, for mental anguish suffered by plaintiff, in not being able to meet his relatives, attending the funeral, as early as he otherwise would.

DAMAGES: Death Message—Delayed Delivery—Excessive Verdict—When Disturbed. The fact that the jury allowed a greater sum for mental anguish than the appellate court would have allowed is not sufficient to overthrow the verdict. Passion and prejudice must appear.

*Appeal from Webster District Court.*—HON. R. M. WRIGHT, Judge.

SATURDAY, DECEMBER 19, 1914.

REHEARING DENIED TUESDAY, MARCH 16, 1915.

ACTION for damages because of the negligent delay of the defendant company in the transmission and delivery of a telegram. There was a trial to a jury and a verdict and judgment for plaintiff. The defendant appeals.—*Affirmed.*

*Geo. H. Fearons, Thomas A. Cheshire,* and *Healy, Burnquist & Thomas,* for appellant.

*Kenyon, Kelleher & O'Connor,* for appellee.

PRESTON, J.—The grounds of negligence alleged are substantially that the defendant was negligent in failing to transmit the message with reasonable dispatch and without unreasonable delay; and that the defendant was negligent in failing to transmit and deliver the message to plaintiff within a reasonable time after it was filed with and delivered to the agent of the telegraph company; and that the defendant and its agents and employees failed to forward and deliver the message with fidelity and without unreasonable delay as required by the statute. As to the damages sustained, the plaintiff alleges that because of said unreasonable delay he did not arrive at Ames, Iowa, in time to make and participate in the

preliminary arrangements for his mother's burial, as he other-
wise would, nor was he able to reach said Ames and meet his
other relatives who were present, as early as he otherwise
would.   That because of the negligence of the said defendant
and the unreasonable delay in forwarding and delivering said
message, the plaintiff was caused to suffer grief and mental
anguish and pain, to his damage.   The message was delivered
to the defendant at 10:00 o'clock in the evening of February
28, 1912, by F. C. Tilden, a brother-in-law of the plaintiff, and
is as follows:

Ames, Iowa, Feb. 28, 1912.

C. E. Albrook, C/O Clerk of Court, Clarion, Iowa.

Mother cannot live.   Heart action·bad.   Nothing more
to do.

F. C. Tilden.

The operator at Ames testifies that the telegram was sent
out between 10:00 and 11:00 o'clock that night.   At that
time Judge Albrook, the plaintiff, was holding court at Clar-
ion.   The telegram was not delivered to plaintiff until 8:45
o'clock of the morning of February 29th.   Plaintiff's mother
died at about 12:00 o'clock, or midnight or a little after, of
the 28th.   Before the telegram was delivered on the morning
of the 29th, and at about 8:00 o'clock that morning, the plain-
tiff received a telephone message from his relatives in Ames
that his mother was dead; and at this time he was told that
preparations for his mother's funeral would be delayed and
nothing would be done in regard to the funeral arrangements
until plaintiff arrived.   Some of the funeral arrangements
were in fact delayed until his arrival, but before that an
undertaker had been selected and the body embalmed and
dressed.   The distance from Ames to Clarion is about sixty-
three miles, and from Clarion to Eagle Grove about nine
or ten miles.   Although it was winter time and there was some
snow on the ground, the roads were good.   If plaintiff had
received the message at any time up to 6:00 o'clock on the

morning in question, he would have driven to Eagle Grove
in time to have taken a train there at 7:40 o'clock and would
have arrived in Ames at about 9:30 o'clock that morning. As
it was, the first train, after he received the telegram, left
Clarion about 12:00 o'clock noon, and there was a wait of
two or three hours at Eagle Grove. Plaintiff arrived at Ames
about 6:00 o'clock P. M. of the 29th, or a delay of about nine
hours. The office of the defendant company at Clarion was
open for business at the time in question from four o'clock ·
in the morning until 9:30 o'clock in the evening. The trial
court instructed the jury that such hours were reasonable
hours and that the defendant was not required to receive a
message at Clarion between the hours of 9:30 P. M. of Feb-
ruary 28th and 4:00 A. M. of the 29th day of February. At
that time there was long distance telephone service between
Clarion and Ames, and the telephone exchange at Clarion was
open as early as 4:00 o'clock in the morning. After the plain-
tiff received the telegram, he could have communicated with
his relatives at Ames but did not do so. At the time of her
death and for a few months prior thereto, the plaintiff's
mother lived with her daughter, Mrs. Tilden, at Ames, Iowa.
The mother was eighty-nine years old. Previous to her death
the relationship between plaintiff and his mother was close,
intimate and affectionate. Plaintiff saw his mother a few days
before at Clarion. At that time, her health was not as good
as it had been, but there was nothing alarming in her condi-
tion. He had been making daily inquiries by telephone to ·
ascertain if any serious complication had set in. Plaintiff's
home was at Eldora. When the plaintiff arrived at Ames,
his youngest and oldest sister and a brother were there. His
oldest brother and his wife arrived after the plaintiff. While
the record does not show the exact hour of the arrival of
those who had arrived before plaintiff, it does show that Mrs.
Tilden, plaintiff's sister, was there at and from the time of
the mother's death, and had plaintiff arrived there as early
as 9:00 o'clock of the morning of the 29th, he would have
then met Mrs. Tilden and would have met the other sisters

and brothers, except his oldest brother who came in after that and before plaintiff arrived at 6:00 o'clock. Plaintiff could have met some of them as early as 9:00 o'clock on the morning of the 29th had he been there. There was a telephone at the home of the clerk of the court. The depot where the defendant had its office was only two or three blocks away from the court-house in which plaintiff stayed. The defendant does not show but that the message was in the Clarion office to be delivered as early as 4:00 o'clock in the morning, at which time the telephone exchange was open. The evidence was such that the jury could have found that the message should have been delivered to plaintiff a short time after 4:00 o'clock in the morning. It does not appear that defendant made any effort to deliver the message until 8:45 o'clock that morning. There was no difficulty in locating the party to whom the message was sent. Other facts will be referred to in connection with different points argued and are omitted now to avoid repetition.

The jury was amply justified in finding that the defendant was negligent and that the plaintiff's delay in reaching Ames was chargeable to the delay on the part of defendant in delivering the message. In fact, it is not claimed that defendant was not negligent and no excuse is offered in argument. The errors assigned are grouped under three heads: contributory negligence, elements of damages, and excessive damages.

1. It is urged by defendant that because plaintiff did not communicate with his relatives at Ames by telephone during the day and failed to use the facilities at hand to make

1. DAMAGES; avoidable consequences: contributory negligence: distinction between.

any suggestions as to the arrangements for his mother's burial, plaintiff was thereby guilty of contributory negligence, or at least that it was a question for the jury. With this thought in mind the defendant requested the court to submit to the jury the following four instructions, numbered I, III, IX and X, respectively:

I.

"You are directed to return a verdict for the defendant.

III.

"Plaintiff admits that he talked with his relatives at Ames by telephone and that he could at any time have conversed with his relatives at Ames over the telephone, and made known his wishes respecting the preparation of the body of his mother for burial and other preliminary arrangements for the funeral, and his failure to make use of the means of telephonic communication constituted contributory negligence, and you will therefore return a verdict for the defendant.

IX.

"You are instructed that the principle that it is the duty of a person injured by the negligence of another, to do what he can to mitigate the damages, and that he cannot recover the enhanced damages consequent upon his failure in this respect, is applicable to the case under consideration. Applying this principle to the facts in this case, if you find that plaintiff by using the telephone, could have conferred with his relatives in Ames with respect to the preliminary preparations for the funeral of his mother, and failed to do so, when if he had availed himself of this means of communicating with them he could and would have relieved himself of mental anguish and suffering, in whole or in part, then you should find that he was guilty of contributory negligence and cannot recover.

X.

"It was the duty of the plaintiff to exercise ordinary care to relieve himself from injury or damage on account of any negligence of the defendant, if you find that the defendant was negligent. If, therefore, you find that by telephoning to his relatives at Ames, and, in that manner he could have consulted with and made preliminary arrangements with them for the funeral, pending his arrival, and by so doing would have relieved his mental anguish and suffering in whole or in part and failed so to do, then you would be justified in

finding that he was guilty of contributory negligence and cannot recover."

These offered instructions were refused and in this it is said the court erred. The defendant also moved for a directed verdict and for a new trial on this and other grounds. The trial court did instruct that before plaintiff could recover he must have shown that he was not guilty of contributory negligence and in another instruction contributory negligence was defined. No complaint is made, as we understand it, of the rule of law thus stated. But as to the particular matter of the failure of plaintiff to telephone during the day, covered by the offered instructions of the defendant, the court took the view that such fact was proper to be considered by the jury in mitigation and instructed on that subject as follows:

"If you find that by telephoning to his relatives at Ames, plaintiff could have consulted with them with respect to the making of preliminary arrangements for the funeral pending his arrival, and he failed so to do, it would be proper for you to consider such fact in mitigation of damages if you find in favor of the plaintiff."

The gist of plaintiff's claim is the failure of defendant to transmit and deliver the message to plaintiff, thereby causing his delay in reaching his mother and the mental anguish occasioned thereby. Plaintiff had nothing to do with transmitting or delivering the message. Nor did his failure to telephone his relatives have anything to do with that matter or with his delay in reaching his mother. Had plaintiff's failure to telephone caused delay in delivering the message or his own delay in reaching Ames, it would be a different matter.

The most that can be said is that had he telephoned it might have relieved his anxiety and thus reduced his damages. But even as to this, it should be borne in mind that he had been informed at 8:00 o'clock that morning that the funeral

arrangements would be delayed until plaintiff's arrival. The necessity for further telephoning, in regard to this matter at least, is not apparent. It would be very unsatisfactory to attempt to make funeral arrangements by telephone.

It is doubtless true that in cases of this kind, as in other cases of negligence, plaintiff may be precluded from recovering damages for mental anguish by reason of his own contributory negligence. 37 Cyc. 1791. Illustrations are there given and may consist in failure to send a message requesting the postponement of a funeral, or in failing to take an earlier train which the party might have taken, or in stopping off at an intermediate point. Cases are there cited upon which defendant relies. The question of contributory negligence which defeats a recovery entirely is a different matter from the duty of an injured person to use reasonable efforts to reduce damages. Appellant cites 2 Joyce on Electric Law, Sec. 972, to this effect:

"The duty rests upon all persons for whose losses others may be liable to respond, to take all reasonable measures to diminish the damages that may occur. This principle applies to all who may claim indemnity from others for losses either upon express contracts or for torts. So in cases where a person has been injured by the failure to deliver a telegraph message, or by an error in transmission thereof, and he stands in a position to suffer further loss in addition to that already incurred, he should exercise reasonable efforts to make the loss as light as possible, and there can be no recovery of damages for any loss which might have been averted by the exercise of such efforts."

To the same effect, Hale on Damages, page 64, et seq., Sutherland on Damages, Sec. 88. In the last citation the rule is stated thus:

"The law imposes upon a party injured by another's breach of contract or tort the active duty of using all ordi-

nary care and making all reasonable exertions to render the
injury as light as possible. If by his negligence or willful-
ness he allows the damages to be unnecessarily enhanced, the
increased loss, that which was avoidable by the performance
of his duty, falls upon him. This is a practical duty under
a great variety of circumstances, and as the damages which
are suffered by a failure to perform it are not recoverable
it is of great importance.''

Under this rule it is only the damages which might be
avoided by the exercise of ordinary care in this respect which
cannot be recovered, rather than the whole of the damages
which may be sustained. In other words, it is available to the
defendant as mitigating the damages sustained by plaintiff
rather than as a complete defense.

As before stated, plaintiff's failure to telephone had
nothing to do with the delay in delivering the message or with
plaintiff's delay in reaching Ames. The instructions at this
point were as favorable to defendant as it could ask, and
there was no error.

2. Under division two of appellant's argument in regard
to elements of damage, it is contended that there is no evi-
dence that the plaintiff suffered any damage as a result of
being unable to reach Ames and meet his
other relatives who were present as early as
he otherwise would; and second, that such
mental anguish would not be the natural and
proximate result of the alleged negligent act complained of.
The trial court in the instructions did not treat the question
of damages on account of grief and anguish because of plain-
tiff's failure to meet his relatives as soon as he otherwise
would, as a separate element of damages as distinguished from
grief and anguish produced by plaintiff's failure to partici-
pate in the funeral arrangements as early as he otherwise
would. The failure to deliver the message caused the delay
in plaintiff's arrival at Ames and this delay includes, or may

2. APPEAL AND
ERROR: instruc-
tions: pre-
sumption that
jury obeyed.

include, both these elements if they are the natural and proximate result of the negligence of the defendant.

In reference to this matter the court in instruction three informed the jury among other things that the burden of proof was on plaintiff to show:

1st. That there was unreasonable delay in delivering to him the said message;

2nd. That had the message been delivered to him within a reasonable time and with reasonable diligence, he would have reached the town of Ames and where his mother was earlier than it was possible for him to do because of the delay in the delivery of the said message;

3rd. That by reason of such unreasonable delay, he was not able to participate in the preliminary arrangements for his mother's burial, nor could he meet his relatives as early as he otherwise would have met them;

4th. That he himself was free from negligence which proximately contributed to produce the delay which rendered him unable to participate in the preliminary arrangements for his mother's burial and prevented him from being able to meet his relatives as early as he otherwise would have met them;

5th. That plaintiff, by reason of such unreasonable delay, was caused to suffer grief, mental anguish and pain;

6th. That within sixty days from and after the time of the said delay, he presented in writing to said defendant his claim for damages;

7th. That the said unreasonable delay was the proximate cause of the suffering by plaintiff of the said grief, mental anguish and pain;

8th. That he has been damaged, and the amount thereof.

If the plaintiff has proved each of the foregoing propositions by preponderance of the evidence, he should recover in this action.

And in instruction seven, the jury was told: "If you

find from a preponderance of the evidence that the defendant after 4 o'clock A. M. of the 29th day of February, 1912, acting as a reasonably prudent man would have acted under like conditions, should have delivered the message to plaintiff sooner than it did in fact deliver it, then defendant was negligent, and if such negligence was the proximate cause of delaying the plaintiff in reaching the city of Ames, and such delay prevented him from participating in the preliminary arrangements for his mother's burial as early as he otherwise would have done and from meeting his relatives as early as he would otherwise have met them, and that such facts were to him a source of grief, pain and anguish, and he himself was free from contributory negligence, then you should find in plaintiff's favor, provided that you find that he served notice of his claim for damages in the manner as alleged in his petition."

In an instruction on the measure of damages, the court said, "You, however, must be governed by the facts shown by the evidence in the case." Defendant requested an instruction as follows: "There is no evidence that the plaintiff suffered or sustained mental pain or anguish because he was delayed in reaching Ames and in meeting his other relatives who were present as early as he otherwise would, and you will not consider this claim for damages in determining the amount, if any, you shall award the plaintiff as damages in this case." This was refused.

Cases are cited by appellant holding that the burden was upon the plaintiff to prove not only the unreasonable delay on the part of the defendant in the delivery of the message but his measure of damage also. Plaintiff concedes this to be the rule. Plaintiff urges that even though appellant's contention be true, that there is no evidence that plaintiff suffered any damage as a result of being unable to reach Ames and meet his other relatives as early as he otherwise would, still, under the instructions given, the jury could have awarded the amount of the verdict for grief and anguish pro-

duced by plaintiff's failure to participate in the funeral ar-
rangements as soon as he otherwise would, and allowed noth-
ing for grief and anguish because of plaintiff's failure to
meet his relatives; that it cannot be assumed that the jury
has allowed damages for such grief and pain of which there
is no evidence, inasmuch as the jury was told to base the
verdict upon the facts shown by the evidence. We are in-
clined to this view. The question is whether plaintiff suffered
because of the delay occasioned by the neglect of defendant,
which, as stated, may include either one or both of these ele-
ments. It seems to us that instruction number seven is favor-
able to defendant. The court might well have said that if
such delay prevented plaintiff from participating in the pre-
liminary arrangements for his mother's burial as early as he
otherwise would have done, or from meeting his relatives,
etc., and that he was thereby caused grief, etc., he would be
entitled to recover. Appellant does not seriously contend,
as we understand the argument, that if defendant's neglect
was the cause of delaying plaintiff in reaching Ames, and such
delay prevented him from participating in the preliminary
arrangements for his mother's burial as early as he otherwise
would, that plaintiff would not be entitled to recover for grief
and anguish occasioned thereby. True, plaintiff was told by
telephone in the morning that the funeral arrangements would
be delayed until his arrival, but they were not all delayed
until that time. When he did arrive he then found that what
had been done was satisfactory. But his anxiety was occa-
sioned by his own delay in not being able to be present and
participate as early as he otherwise would. Until his arrival
he would not and could not know that they
3. TELEGRAPH
AND TELE-
PHONE: death
message: de-
layed delivery:
mental an-
guish: evi-
dence: suffi-
ciency.
were satisfactory. We think there was evi-
dence on this point. It is true plaintiff did
not testify that he suffered so much for one or
the other of these two matters and, of course,
could not be allowed to do so. Nor did he
testify in so many words that he suffered because he was

unable to meet his relatives.  But he did testify that his sisters and one brother, blood relatives, were at Ames before he arrived, so that they were there.  It is known of all men that one of the objects in being present on such an occasion is to meet one's relatives who are present.  Plaintiff testified that because of his being delayed during the day and waiting at Clarion and Eagle Grove, he was very much depressed, worried, and annoyed, and that such condition of mind continued all day long and for some time afterwards.  He did not in fact meet his relatives as early as he otherwise would by about nine hours, as to one sister at least.

It does not definitely appear when some of the others arrived.  Some of the others arrived before plaintiff and one afterward.  If plaintiff had arrived nine hours before, he could not, of course, have met those not then present, but this would not defeat plaintiff entirely as to this item, for some of his relatives were present all the time and would have been there upon plaintiff's arrival if he had not been delayed. This was a matter for the jury to take into consideration in fixing damages.  Plaintiff admits his grief because of the death of his mother, but the evidence was such that the jury could have found therefrom that his grief and distress over his mother's death was intensified because of the delay in his reaching Ames to participate in the funeral arrangements and failure to sooner meet his relatives.  There is other evidence as to this last item, but as we understand the argument, no question is made as to that at this point.

3. It is said by appellant that the court in its instructions made no distinction between blood relatives and relatives by affinity, and that the instructions permitted the jury to award damages to plaintiff for his inability to sooner meet his two brothers-in-law.  The recovery was not for failure to meet anyone but for mental anguish because of the delay.  As stated, the evidence did show that plaintiff failed to meet two sisters and a brother as early as he otherwise would.  Brothers and

4.  TRIAL: instructions: correct but not explicit: waiver.

sisters are "relatives" within the meaning of the instruction, and the mere fact that there were brothers-in-law, and that brothers-in-law might also be said to be "relatives" within the meaning of the instruction, does not argue that the instruction was erroneous. The instruction is correct so far as it goes, and there was evidence in the case to which the same was properly applicable, and if the defendant desired such a definition of the term "relatives" to be given to the jury as to enable the jury to eliminate from their consideration the brothers-in-law, it was the defendant's duty to ask such an instruction.

This court, on a similar question in the case of *Williams v. Park Association*, 128 Iowa 32, at 36, said: "It is argued that an instruction which told the jury that defendant would be liable for the negligence of its officers is erroneous, because it did not refer to the acts of its agents, servants, and employees, as well as its officers. The instruction being unquestionably right as far as it went, and plaintiff having failed to call the court's attention to the further proposition now suggested, there is no ground to allege error." See also the case of *State v. Hazen*, 39 Iowa 648, 650; *Murphy v. Hiltibridle*, 132 Iowa 114; *Osborne, etc. v. Ringland*, 122 Iowa 329, 334; *Hill v. City of Glenwood*, 124 Iowa 479, 483.

4. But counsel for appellant say that, admitting for the purpose of argument that plaintiff suffered mental pain and anguish because of the delay in meeting his relatives as early as he otherwise would have done, such mental anguish was not the proximate result of the negligence of defendant. The thought briefly stated is that such damages were not within the contemplation of the parties and that the defendant company had no notice from the language of the message or otherwise that such damages would be likely to result to plaintiff from its negligent delay in delivery.

5. TELEGRAPHS AND TELE-PHONES : death message : delayed delivery : proximate results.

The rule contended for by appellant is the holding in some jurisdictions, but it has not been followed by this court.

Many of the cases cited by appellant have been referred to in some of our cases and this court declined to follow them. Appellant quotes from 37 Cyc. 1781, as follows:

"The rule that plaintiff can recover only such special damages as may be said to have been within the contemplation of the parties applies to damages for mental anguish as well as for actual pecuniary loss, so that there can be no recovery on this ground unless the telegraph company had notice from the language of the message or otherwise, that by reason of its negligence or default such damages would be likely to result; and this rule applies not only to the existence of any mental anguish, but also to the particular elements or grounds for such suffering in the particular case."

The latter part of the same paragraph from which the above is taken reads: "If, however, the company has notice, either from the language of the message or otherwise, of facts from which the resulting mental anguish might reasonably have been anticipated, it will be liable therefor; and ordinarily the fact that the message shows that it relates to a matter of sickness or death is sufficient to charge the company with notice that someone is likely to suffer mental anguish from its non-delivery or delay, although it may not be sufficient to charge the company with notice that mental anguish will result to the particular person appearing as plaintiff." The message in question does not, it may be, give notice that plaintiff as a particular person would probably suffer mental anguish from failure to meet his relatives. But it was in effect a death message. From it the company was advised that the person referred to in the message was near to death, and was sufficient to charge the company with notice that "someone is likely to suffer mental anguish from its non-delivery or delay, although it may not be sufficient to charge the company with notice that mental anguish will result to the particular person appearing as plaintiff." 37 Cyc. 1782. It seems to us the company ought to assume that

plaintiff had some close interest in the matter or a telegram would not be sent to him, and that on such occasions relatives are likely to be present. As before stated, everyone knows and the telegraph company ought to know that one of the reasons for a person's desiring to be present on such an occasion is to meet relatives who may be present, and if there are such relatives present, delay in meeting them will naturally occasion mental anguish to the person delayed.

At any rate, we regard this point urged by appellant as settled against its contention. It is unnecessary to again review the cases or give the reasons by which the conclusion was reached. The rule for Iowa was stated thus in *Foreman v. Telegraph Co.*, 141 Iowa 32, 36: "The relationship of the parties need not appear upon the face of the message, nor is it essential that defendant should know of the special relation existing between the parties interested. That some damage would likely be expected to follow from failure to deliver defendant well knew; and it is not essential that it be advised of the exact damage to be anticipated. . . . The rule above announced seems to be sound in principle, although it is not in accord with that adopted in Alabama, South Carolina, and Texas. See *W. U. Company v. Ayers*, 131 Ala. 391; *Butler v. Telegraph Co.*, 77 S. C. 148; *W. U. Co. v. Wilson*, 97 Tex. 22, 75 S. W. 482." See also *Cowan v. Telegraph Co.*, 122 Iowa 379, 386; *Maley v. Telegraph Co.*, 151 Iowa 228. See also *Western Union v. Moxley*, 98 S. W. 112, 113, where the Supreme Court of Arkansas says: "Cases are brought to our attention holding that, even though the message gives notice on its face that it concerned sickness or death of another and contains a summons to the addressee, still there can be no recovery for mental anguish by one not related by blood unless the company was notified of the relationship which would give rise to the mental anguish. This is the doctrine of the Texas courts. *W. U. T. Co. v. Coffin*, 88 Tex. 94, 30 S. W. 896. That court has also held that an uncle could not recover for mental anguish caused by failure to promptly

deliver a telegram containing information of the illness of his niece and summoning him to attend, because there was no notice to the company that the relationship was such as might cause mental suffering on account of delay in delivering the message. *W. U. Tel. Co. v. Wilson,* (Tex. Sup.) 75 S. W. 482. The doctrine announced by those cases does not commend itself to our approval  The rule in *Hadley v. Baxendale* cannot be extended further, in this class of cases, than to hold that, before the company can be made to respond in damages for mental anguish inflicted by negligent delay in transmission or delivery of a message, it must have notice of the facts from which it may reasonably be inferred that such damages may result from delay. Where the message upon its face gives notice of facts, as of physical injury, illness, or death, from which the company may fairly infer that mental anguish will result to the sender or addressee from delay in its transmission or delivery, then the company will be liable for negligent delay. Special notice that the relationship between the parties is such that delay will cause mental anguish is unnecessary. *Cashion v. Telegraph Co.* (N. C.) 32 S. E. 746. In *Lyne v. Telegraph Co.* (N. C.) 31 S. E. 350, it was held that where a telegram relates to sickness or death it is not necessary to disclose to the company the relation of the parties, as there is a common sense suggestion that it is important, and that mental suffering to someone will result from delay. The fact that a message is sent relating to death or illness is sufficient to reasonably indicate that the addressee is interested by ties of affection in the person about whom the message relates.''

The question as to what is the proximate cause is ordinarily a question of fact for the jury. *Wheeler v. Ft. Dodge,* 131 Iowa 566, 580. We are of opinion that the court did not err at this point.

5. It is said the amount of damages awarded is excessive. In *Mentzer v. Telegraph Co.,* 93 Iowa 752, and *Cowan v. Tele-*

*graph Co.,* 122 Iowa 379, the jury in each case returned a

6. DAMAGES :
death message :
delayed deliv-
ery : excessive
verdict : when
disturbed.

verdict for a smaller amount than the verdict in this case and it is said by appellant that the facts were as aggravated as here. But the fact that the jury did so is not a precedent for what the court ought to do. It is a question for the jury. The fact that the jury in this case allowed a larger amount than we would does not necessarily require us to fix the amount. Such a rule would put the court in the place of the jury. We may interfere if the award is clearly excessive, but the fact that the jury allowed more than we would does not necessarily indicate that the jury acted through passion or prejudice. There is, of course, no fixed standard. One jury might award a larger sum than another where the facts were no more aggravated. The damages are not based at so much per hour as suggested by appellant. Plaintiff was not prevented from being present at his mother's funeral, but he was delayed about nine hours waiting along the way and at railway stations with his mother lying dead and he delayed in meeting his relatives, and not permitted to participate in the funeral arrangements. Some men are so constituted that they are able to control their feelings better than others and it is for the jury to say how much in this case plaintiff should recover. The circumstances were such as to produce mental suffering. We would not be justified in interfering.—*Affirmed.*

LADD, C. J., EVANS and WEAVER, JJ., concur.